**Malladene LARGO, Plaintiff–Appellant,**

v.

**Franklin SUNN, individually and in his official capacity as Director of the Department of Social Services and Housing, State of Hawaii, Defendant–Appellee.**

**No. 87–1748.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1987.

Decided Dec. 23, 1987.

John Ishihara, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiff-appellant.

Thomas D. Farrell, Deputy Atty. Gen., Honolulu, Hawaii, for defendant-third party plaintiff-appellee.

Janet Isak Hawley, HHS, Family Support and Human Development Services Div., Washington, D.C., for appellee-third party defendant.

Michael Chun, U.S. Atty. Gen., Honolulu, Hawaii, for third-party defendant-appellee.

Before BROWNING, WRIGHT, and LEAVY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We must decide whether 42 U.S.C. § 602(a)(18) (Supp.III 1985) prohibits a state from determining eligibility for aid to families with dependent children on the basis of a standard of need that may vary among families of the same composition.

## I.

Under Hawaii's Department of Social Services and Housing (DSSH) Aid to Families with Dependent Children (AFDC) plan, qualifying recipients are eligible for AFDC benefits if their gross income does not exceed 185 percent of the state-established "standard of need." Standard of need is determined by combining the "basic needs allowance" a fixed amount based upon family size) with the recipient family's *actual* shelter and utility costs (up to a prescribed maximum, again based upon family size).[1] Hawaii's plan is approved by the Secretary of the Department of Health and Human Services (HHS).

Largo received AFDC benefits through DSSH. She lived with her parents, paying them $175 monthly rent for herself and one daughter. In December 1985, Largo became employed, earning $693 per month. She continued to receive AFDC payments until February 1986, when DSSH notified her that her earnings were greater than 185 percent of her standard of need,[2] and that she had received excess AFDC benefits in December 1985 and January 1986. DSSH sought to recover those payments.

Largo, seeking to avoid repayment, brought a class action in state court against DSSH challenging Hawaii's standard of need calculation. She argued that the plain language of 42 U.S.C. § 602(a)(18)

requires Hawaii to determine a family's standard of need based upon family size alone, not upon individualized family circumstances such as actual shelter costs.[3]

DSSH filed a third party complaint against HHS. HHS removed the case to federal district court. Largo moved for summary judgment. DSSH also moved for summary judgment, arguing that Hawaii is not prohibited from using actual shelter costs in determining a recipient's standard of need for purposes of determining eligibility.

The district court certified the class, denied Largo's motion, and granted DSSH's motion. The court found that DSSH's interpretation was reasonable, and consistent with congressional intent and HHS's construction of the statute. Largo appealed. We affirm.

## II.

### A. *Standard of Review*

■ There are no disputed questions of fact. Summary judgment here was based upon interpretation of a federal statute. Our review is *de novo*. See *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986); *United States v. Horowitz*, 756 F.2d 1400, 1403 (9th Cir.), *cert. denied*, 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985).

### B. *Background*

The AFDC program is a system of cooperative federalism established by Congress to furnish financial assistance to needy families with dependent children. *Sudomir v. McMahon*, 767 F.2d 1456, 1457 (9th Cir.1985). States receive federal AFDC funds once they establish a plan approved by the Secretary of HHS. 42 U.S.C. § 601 (1982).

---

1. Largo's basic need allowance was $175. Her actual shelter cost was $175. The maximum shelter allowance for a family of two is $215.

2. In calculating Largo's standard of need, DSSH added her basic need of $175 to her actual shelter cost of $175, arriving at a total need of $350. 185 percent of $350 is $647.50.

3. Largo argues that standard of need should be basic need plus the DSSH *maximum* shelter allowance for a family of two. Accordingly, her standard of need would have been $390. Under this formulation, Largo would remain eligible for AFDC benefits because her gross income is less than 185 percent of $390.

To gain approval, a state's plan must meet certain statutory requirements. *Id.* § 602 (Supp.III 1985). One provision, adopted in 1981, requires that states provide AFDC money only to families whose gross income does not exceed 150 percent of the state's standard of need. Omnibus Budget Reconciliation Act (OBRA) of 1981, Pub.L. No. 97–35, § 2303, 95 Stat. 845. In 1984, Congress increased the percentage to 185 percent. Deficit Reduction Act, Pub.L. No. 98–369, § 2621, 98 Stat. 1134 (1984) (codified at 42 U.S.C. § 602(a)(18) (Supp.III 1985)). Section 602(a)(18) requires that a state plan must:

provide that no family shall be eligible for aid under the plan for any month if, for that month, the total income of the family (other than payments under the plan), without application of paragraph (8), other than paragraph (8)(A)(v), exceeds 185 percent of the State's *standard of need for a family of the same composition*. . . .

*Id.* (Supp.III 1985) (emphasis added). Largo argues that the phrase, "standard of need for a family of the same composition," prohibits Hawaii from establishing different standards of need for families of the same composition.

C. *Analysis*

■ This is a question of first impression. We must discern the intent of Congress in adopting section 602(a)(18). We look "to the traditional signposts of statutory construction: first, the language of the statute itself; second, its legislative history, and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency." *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985) (citations omitted).

1. *Plain Meaning*

■ "[T]o implement legislative intent, the primary rule is to ascertain and give effect to the plain meaning of the language used." *Pacific Mut. Life Ins. Co. v. American Guar. Life Ins. Co.*, 722 F.2d 1498, 1500 (9th Cir.1984). We recognize that "it is the duty of the court to give significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. . . ." *In re Borba*, 736 F.2d 1317, 1320 (9th Cir.1984). In construing a statute, we examine the language in isolation as well as in context. *See Pacific Mut. Life*, 722 F.2d at 1500.

Although "family of the same composition" modifies "standard of need," we are not persuaded that the plain meaning of the language is that all families of the same composition must have the same standard of need. Section 602(a)(18) does not state that all families of the same composition must have the same standard of need; rather, it directs states to determine a family's eligibility by comparing income with the standard of need.

The language may be amenable to Largo's asserted meaning; however, it may also mean that a state, in determining AFDC eligibility, is to use the standard of need appropriate for the family's composition. We do not observe any language in section 602(a)(18) that makes plain a congressional intention that the standard of need must be the same for families of the same composition.

The meaning of the statute's language is no more plain after examining other AFDC provisions. "Family of the same composition" is used in two other subsections of section 602, once when referring to the amount payable under the state plan, § 602(a)(22)(A), and once when referring to the state's standard of need, § 602(a)(31). We observe also that another provision dealing with AFDC refers to "the cash needs standard established by the State under its plan for a family of the same size and composition." *Id.* § 615(b)(1)(B)(ii). We do not think that Congress would have used "family of the same composition" on several occasions, and in such an inconsistent fashion, if it had intended that the standard of need must be the same for families of the same composition.

2. *Legislative History*

Largo's interpretation is not supported by the legislative history. Congress

adopted section 602(a)(18) as part of the Omnibus Budget Reduction Act (OBRA) to limit welfare assistance to those who are most in need. S.Rep. No. 139, 97th Cong., 1st Sess. 504, *reprinted in* 1981 U.S. Code Cong. & Admin. News 396, 770–71. The overall purpose of the OBRA was to reduce federal spending. *See id.* at 2, *reprinted in* 1981 U.S. Code Cong. & Admin. News at 397 (Views of the Committee on the Budget). The explanation of the eligibility provision makes clear the role of standard of need: "The standard of need is used to determine whether a family is eligible for any assistance, and a family which has income more than 50 percent above that standard should not be considered in need." *Id.* at 504, *reprinted in* 1981 U.S. Code Cong. & Admin. News at 771.

Moreover, courts have long recognized that Congress granted states broad discretion to determine their standard of need. *See, e.g., Rosado v. Wyman,* 397 U.S. 397, 408, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970); *King v. Smith,* 392 U.S. 309, 318–19 & n. 14, 88 S.Ct. 2128, 2133–34 & n. 14, 20 L.Ed.2d 1118 (1968) (noting that legislative history makes clear that "States have power to determine who is 'needy' "); *La-Madrid v. Hegstrom,* 830 F.2d 1524, 1526 (9th Cir.1987). The items which make up the standard of need vary from state to state. *Rosado,* 397 U.S. at 408, 90 S.Ct. at 1215. According to the Secretary: "Some states vary the standard of need based on geographical variations, for example, giving a larger shelter allowance to AFDC families living in the urban areas of the state." Brief of the Appellee–Third Party Defendant at 12; *see Jones v. Blinziner,* 536 F.Supp. 1181, 1196 (N.D.Ind.1982) (observing that Indiana standard of need includes actual amount of rent excluding utilities up to a $100 maximum); *cf. McCoog ex rel. Ferguson v. Hegstrom,* 690 F.2d 1280, 1282 (9th Cir.1982) (stating that states have option of calculating AFDC benefits on individual basis). As the Supreme Court has observed, states have used a variable standard for more than 20 years:

At least as early as 1966 federal regulations recognized that States could properly include special-needs items in their standards of need for AFDC. These "are usually defined as those needs that are recognized by the State as essential for some persons but not for all, and that must therefore be determined on an individual basis." Whenever the special need is found to exist, it is budgeted in the total standard of need.

*Quern v. Mandley,* 436 U.S. 725, 737, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978) (citation omitted).

A conspicuous lack of guidance from Congress in formulating the standard of need confirms the breadth of discretion granted to states. The only statutory requirement is that the standard be adjusted to reflect 1969 inflation levels. *See Everett v. Schramm,* 772 F.2d 1114, 1115 (3d Cir. 1985); 42 U.S.C. § 602(a)(23) (Supp.III 1985).

Nothing in the legislative history of section 602(a)(18) suggests that Congress intended to limit states' discretion to determine standard of need. The House bill and Senate amendment contained identical provisions: "Eligibility for AFDC would be limited to families with gross income at or below 150 percent of the State's standard of need." H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 979, *reprinted in* 1981 U.S. Code Cong. & Admin. News 1010, 1341. There is no indication that Congress intended that the standard of need be the same for families of the same composition.

Given the tradition of broad discretion enjoyed by states, we do not believe that Congress would make such a significant change without stating expressly its intention. When Congress decided that states must adjust their standard of need to reflect the cost of living, it did so by enacting a subsection that stated plainly this requirement. *Id.* § 602(a)(23). If Congress intended that state AFDC plans must establish a standard of need that is the same for families of the same composition, we think it would have stated so in a similar manner. *Cf. Church of Scientology of California v. IRS,* —— U.S. ——, 108 S.Ct. 271, 276, 98 L.Ed.2d 228 (1987) (refusing to believe that Congress would adopt in the manner it did an amendment that would be

a significant alteration to the basic thrust of a draft bill).

### 3. *Agency Interpretation*

 Our conclusion that Congress did not intend to restrict states' discretion to determine the standard of need is consistent with the interpretation of the agency charged with administering AFDC. That interpretation is entitled to deference when it is reasonable and based upon a permissible construction. *Lukhard v. Reed,* — U.S. ——, 107 S.Ct. 1807, 1813 n. 3, 95 L.Ed.2d 328 (1987); *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Wyckoff Co. v. EPA,* 796 F.2d 1197, 1200 (9th Cir.1986).

The Secretary of Health and Human Services must approve state AFDC plans. 42 U.S.C. § 601 (1982). The Secretary does not interpret section 602(a)(18) as prohibiting Hawaii from determining standard of need on the basis of actual shelter costs. The Secretary does not view the statute as requiring states to alter their methods of determining standard of need. He believes that the sole purpose of the statute is to prevent AFDC recipients from receiving AFDC funds if their gross income exceeds 185 percent of their standard of need. The Secretary's interpretation reflects the congressional intent that states have broad discretion to determine their standard of need. It is also consistent with the purposes of OBRA to reduce spending and to help those most needy.

### III.

The plain meaning of the statute's language does not support Largo's construction, nor does the legislative history suggest that Congress intended that the standard of need must be the same for families of the same composition. The agency charged with administering AFDC does not interpret the statute as requiring the same standard of need. Absent something more, we do not believe that Congress intended to prohibit Hawaii from taking into account a family's actual shelter cost in determining the standard of need. We hold that 42 U.S.C. § 602(a)(18) does not prohibit a state from determining AFDC eligibility on the basis of a standard of need that varies among families of the same composition. The judgment is AFFIRMED.