**BV ENGINEERING, Plaintiff–Appellant,**

v.

**UNIVERSITY OF CALIFORNIA, LOS ANGELES, Defendant–Appellee.**

**No. 87–5920.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1988.

Decided Oct. 3, 1988.

Michael A. Ladra, Nina F. Locker, Leo P. Cunningham, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for plaintiff-appellant.

James E. Holst, George L. Marchand, Allen B. Wagner, University of California, Berkeley, Cal., for defendant-appellee.

Peter L. Felcher, Steven B. Rosenfeld, Marjorie L. Van Dercook, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Shirley M. Hufstedler, Hufstedler, Miller, Carlson & Beardsley, Los Angeles, Cal., Michael A. Cardozo, Proskauer, Rose, Goetz & Mendelsohn, New York City, for amici curiae.

Before PREGERSON, WIGGINS and BRUNETTI, Circuit Judges.

PREGERSON, Circuit Judge:

BV Engineering sued the University of California, Los Angeles for copyright infringement. The district court granted summary judgment against BV Engineering on the ground that the eleventh amendment bars actions against the University of California under the Copyright Act of 1976. We affirm.

## I

BV Engineering ("BV") creates and sells computer programs. In 1986, the University of California, Los Angeles ("the University") purchased one copy each of seven copyrighted computer programs sold by BV, with the accompanying user manuals. The University then made three copies of each program, and ten copies of each user manual.

In July 1986, BV commenced this action against the University. BV asserted various causes of action, including one for copyright infringement under section 501 of the Copyright Act of 1976, 17 U.S.C. §§ 101–810 (1982). The district court dismissed with prejudice all claims other than the claim for copyright infringement. On April 17, 1987, the district court granted summary judgment for the University on the ground that the eleventh amendment barred BV's copyright infringement action against the University. *BV Engineering v. University of California, Los Angeles*, 657 F.Supp. 1246, 1250–51 (C.D.Cal.1987). Because the material facts are undisputed, we review only the legal question whether the eleventh amendment immunizes the University of California from suit under the Copyright Act of 1976.

## II

Whether a state is immune from suit under the eleventh amendment is a question of law, which we review de novo. *See, e.g., Charley's Taxi Radio Dispatch Corp. v. SIDA*, 810 F.2d 869, 873 & n. 2 (9th Cir.1987).

## III

The eleventh amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the amendment does not by its terms prohibit an action against a state by one of the state's own citizens, the Supreme Court has recognized such a prohibition. *See Welch v. State Dep't of Highways & Public Transp.*, —— U.S. ——, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987) (plurality) (citing *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890)).

"[T]he University of California and the Board of Regents are considered to be instrumentalities of the state," *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982), and therefore enjoy the same immunity as the state of California.

There are two circumstances under which the eleventh amendment does *not* bar an action for damages against a State. First, a state may waive its immunity and

consent to be sued in federal court. *Welch*, 107 S.Ct. at 2945. Second, Congress may, when acting pursuant to certain powers, create a cause of action for damages against an unconsenting state. *Id.* at 2946. We address these exceptions in turn.

## IV

■ We may find a waiver of eleventh amendment immunity only "where (1) the state *expressly* consents; (2) a state statute or constitution so provides; or (3) Congress clearly intended to condition the state's participation in a program or activity on the state's waiver of immunity." *Collins v. Alaska*, 823 F.2d 329, 331–32 (9th Cir.1987) (emphasis added).

■ It is conceded that California has not *expressly* consented to suit in federal court. Amici argue, however, that California's conduct in the copyright field demonstrates an intent to subject itself to the federal copyright laws. They point to certain California statutes that recognize an obligation to pay royalties on copyrights. *See, e.g.*, Cal.Educ.Code §§ 60289 (West 1978) (state must approve amount of royalty for copyrighted material), 60291 (West Supp.1987) (in fixing cost of books, state includes cost of royalty for copyrighted material). At most, however, California's conduct would amount to *implied* consent to be sued in federal court. Under the first prong of *Collins*, this is not enough. *See also Richard Anderson Photography v. Brown*, 852 F.2d 114, 120–22 (4th Cir.1988) (state does not waive eleventh amendment immunity merely by participating in federal copyright scheme).

■ Nor is there any waiver under prong two of *Collins*. It is true that California has waived its sovereign immunity for tort actions. *See* Cal.Gov't Code § 945 (West 1980) ("A public entity may sue and be sued."); *see also Muskopf v. Corning Hospital Dist.*, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961) (abolishing governmental immunity from tort liability). This waiver does not, however, constitute a waiver of eleventh amendment immunity. "[F]or a state statute or constitutional provision to constitute a waiver of eleventh

amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985), (emphasis in original). A state's waiver of sovereign immunity in its own courts does not effect a waiver of its eleventh amendment immunity in the federal courts. *Welch*, 107 S.Ct. at 2946.

■ Finally, there is no waiver under the third prong of *Collins*. We discern no indication in the Copyright Act of 1976 that Congress intended to condition the states' participation in the national copyright scheme on a waiver of immunity. *See Richard Anderson Photography*, at 120–22 (reaching the same conclusion).

## V

### A

It is well established that Congress has the power to abrogate the states' eleventh amendment immunity in statutes enacted under section 5 of the fourteenth amendment. *See, e.g., Welch*, 107 S.Ct. at 2946; *Collins v. Alaska*, 823 F.2d 329, 332 (9th Cir.1987) ("It is beyond peradventure that, whatever power the Eleventh Amendment withdrew from the federal courts, Congress has the authority under section five of the Fourteenth Amendment to restore it.").

The Copyright Act of 1976, however, was enacted pursuant to the Copyright and Patent Clause, U.S. Const. Art. I, § 8, cl. 8. The Supreme Court has reserved judgment on the question whether Congress may abrogate the states' eleventh amendment immunity pursuant to an Article I power. *See Welch*, 107 S.Ct. at 2946 ("assum[ing], without deciding or intimating a view of the question, that the authority of Congress to subject unconsenting States to suit in federal court is not confined to section 5 of the Fourteenth Amendment"); *County of Oneida, New York v. Oneida Indian Nation*, 470 U.S. 226, 252, 105 S.Ct. 1245, 1260–61, 84 L.Ed.2d 169 (1985) (assuming, without deciding, that Congress may abrogate eleventh amendment immunity when

it acts pursuant to the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3).

Several other circuits have held that Congress *does* have the power to abrogate eleventh amendment immunity when it acts pursuant to Article I. *See United States v. Union Gas Co.*, 832 F.2d 1343, 1350–56 (3d Cir.1987) (Commerce Clause, U.S. Const. Art. I, § 8, cl. 3), *cert. granted,* — U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988); *In re McVey Trucking, Inc.*, 812 F.2d 311, 314–23 (7th Cir.) (Bankruptcy Clause, U.S. Const. Art. I, § 8, cl. 4), *cert. denied,* — U.S. ——, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987); *Peel v. Florida Dept. of Transportation*, 600 F.2d 1070, 1080–81 (5th Cir. 1979) (War Power Clause, U.S. Const. Art. I, § 8, cl. 11).

> Commentators agree:
>
> Article I envisions that the national government will have exclusive power to regulate certain subjects when, in the clearly expressed opinion of Congress, such regulation would serve the nation's interests. To the extent that sovereign immunity would free a state from such national controls, that immunity is inconsistent with the constitutional plan.

Tribe, *Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism*, 89 Harv.L.Rev. 682, 694–95 (1976); *see also id.* at 693 ("Nothing in the language or the history of the eleventh amendment suggests that it must be construed to limit congressional power under the commerce clause or under any other head of affirmative legislative authority."); *cf.* Nowak, *The Scope of Congressional Power to Create Causes of Action Against State Governments and the History of the Eleventh and Fourteenth Amendments*, 75 Colum.L.Rev. 1413, 1469 (1975) ("When the Court finally determines the scope of congressional power to create federal damage actions against state governments, it will further define the nature of federal-state relationships. If it imposes restrictions on this power.... [it] will have to attempt to find a principled basis for restricting the fulfillment of national needs which call for the effective regulation of state activities when none exists.") (footnote omitted).

A decision on this issue may be forthcoming. The Supreme Court recently granted certiorari in a case that endorsed the view that Congress may abrogate eleventh amendment immunity when acting pursuant to the Commerce Clause. *See United States v. Union Gas Co.*, 832 F.2d 1343 (3d Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988). Because the issue is pending before the Supreme Court, we decline to reach it here. We assume, without deciding, that Congress may abrogate the states' eleventh amendment immunity when acting under an Article I power. We conclude that it failed to exercise that power in the Copyright Act of 1976.

### B

The Supreme Court has announced a stringent test for determining whether Congress intended to create a cause of action against the states: "Congress may abrogate the State's constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero*, 473 U.S. at 242, 105 S.Ct. at 3147 (1985). It must express its intention "unequivocally," *id.* at 243, 105 S.Ct. at 3147–48, and "specifically." *Id.* at 246, 105 S.Ct. at 3149. A general authorization for suit is not enough. *Id.; Welch*, 107 S.Ct. at 2947.[1]

---

1. In *Mills Music, Inc. v. Arizona*, we held that Congress had abrogated the states' eleventh amendment immunity in the Copyright Act of 1909. 591 F.2d 1278, 1284–86 (9th Cir.1979). Section 101 of the 1909 Act provided a cause of action against "any person" who infringed a copyright. *See id.* at 1284. We held that the term "any person" was sufficiently broad to include states. *Id.* To support this holding, we relied on the Supreme Court's decision in *Par-* *den v. Terminal Railway,* which held that a general authorization for suit was a sufficient indication of Congressional intent to abrogate eleventh amendment immunity. 377 U.S. 184, 187–90, 84 S.Ct. 1207, 1210–12, 12 L.Ed.2d 233 (1964) (interpreting the term "every common carrier" in the context of the Federal Employees Liability Act).

Section 501 of the Copyright Act of 1976 provides a cause of action for infringement against "[a]nyone who violates the exclusive rights of the copyright owner." 17 U.S.C. § 501(a).[2] We can discern no basis for characterizing this authorization for suit as anything other than general. *See Welch,* 107 S.Ct. at 2947 (characterizing the term "any seaman" as general); *Atascadero,* 473 U.S. at 234–35, 105 S.Ct. at 3142–44 (characterizing the term "any recipient" as general).

Amici note, however, that the 1909 Act used the term "any person," while the 1976 Act uses the term "anyone." They argue that this change in terminology broadens the class of potential defendants, and indicates an intent to make unconsenting states subject to suit in federal court. While amici may be correct that the term "anyone" is broader than the term "any person"—because "anyone" more clearly includes entities—we reject the proposition that this is the type of "unequivocal statutory language" required by *Atascadero. See* 473 U.S. at 246, 105 S.Ct. at 3149. We therefore conclude, with the other courts that have examined this provision, that section 501 does not indicate a Congressional intent to subject unconsenting states to suit for damages in federal court. *See Richard Anderson Photography,* 118; *Woelffer v. Happy States of America, Inc.,* 626 F.Supp. 499, 504 (N.D.Ill.1985) ("The sweeping language employed by Congress arguably includes states within the class of copyright ... infringers. Under *Atascadero,* however, this is not

enough to abrogate sovereign immunity.") (citation omitted).

This does not end our inquiry. It is well settled that in interpreting a statute we must consider each provision in the context of the statute as a whole. *E.g., Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986) (in construing statute, court must look not at a single sentence but at the provisions of the entire statute); *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) (it is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act"); *Largo v. Sunn,* 835 F.2d 205, 207 (9th Cir.1987) (in construing statute, court looks at language in isolation and in context); *see also Richard Anderson Photography,* at 118–19 (declining to limit inquiry to Section 501).

Only two provisions of the Copyright Act of 1976—one of which has lapsed—refer explicitly to states. Section 602(a) provides that the unauthorized importation of copies or phonorecords of a copyrighted work constitutes an infringement actionable under section 501. 17 U.S.C. § 602(a). Subsection (1) exempts from this provision the "importation of copies or phonorecords under the authority of or for the use of ... any State or political subdivision of a State, but not including copies or phonorecords for use in schools, or copies of any audiovisual work imported for purposes other than archival use." 17 U.S.C. § 602(a)(1).

Section 601(a), which is no longer in effect, prohibited the importation of certain designated materials. Section 601(b)(3)

---

Subsequent Supreme Court decisions have made it clear that our conclusion in *Mills Music* was incorrect. In *Atascadero,* the Court held that "[a] general authorization for suit in federal court is *not* ... sufficient to abrogate the Eleventh Amendment." 473 U.S. at 246, 105 S.Ct. at 3149 (emphasis added) (interpreting the term "any recipient of Federal assistance" in the context of the Rehabiliation Act). Two years later, the Court reiterated this rule, and held that "to the extent that *Parden v. Terminal Railway* is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language, it is overruled." *Welch v. State Dep't of Highways & Public Transp.,* —— U.S. ——, 107 S.Ct. 2941, 2947, 2948, 97 L.Ed.2d 389

(1987) (plurality) (interpreting the term "any seaman" in the context of the Jones Act). In light of these cases, it is clear that the term "any person" is not sufficiently broad to encompass States as potential defendants. Thus, our decision in *Mills Music* has been overruled sub silentio. The district court correctly concluded that *Mills Music* is no longer the law of this circuit. *See BV Engineering,* 657 F.Supp. at 1249–50.

**2.** Section 501(a) provides, in full, that "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118, or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright."

provided an exemption "where importation is sought under the authority of or for the use, other than in schools, of ... any State or political subdivision of a State." 17 U.S.C. § 601(b)(3).

BV argues that the mere presence of sections 602 and 601 in the Copyright Act demonstrates Congress' "intent to bring the states within the reach of the Copyright Act and to render them liable as infringers in the same manner as all other infringers." It cites to *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), in which the Supreme Court employed similar reasoning to hold that exhaustion of state administrative remedies is not a general prerequisite to suit under 42 U.S.C. § 1983. In *Patsy*, the Court reasoned that a separate statute, which created a "specific, limited exhaustion requirement for adult prisoners," *id.* at 508, 102 S.Ct. at 2563–64 "[made] sense, and [was] not superfluous" only if Congress intended that there be no *general* exhaustion requirement. *Id.* at 512, 102 S.Ct. at 2565–66. BV argues that sections 602 and 601 and their exemptions are superfluous unless Congress intended that states be subject to suit for copyright infringement in situations *other* than those governed by sections 602 and 601.

BV's interpretation of sections 602 and 601 would be tenable were it not for *Atascadero's* requirement of clear and unmistakable statutory language. *See Atascadero*, 473 U.S. at 243, 105 S.Ct. at 3147–48. As the fourth circuit recently noted, the exemptions in these sections apply to "importation ... under the authority of or for the use ... of any State," 17 U.S.C. §§ 601, 602, not "importation *by* any state." *See Richard Anderson Photography*, at 120 (discussing section 602). This language can "be read as exempting from liability only those private persons or public officials acting in their individual capacity who import copyright materials under governmental authority or for governmental use." *Id.* Because these sections are susceptible to more than one reasonable interpretation, we cannot conclude that they satisfy *Atascadero's* requirement of clear and unmistakable language.

For the same reason, we reject BV's argument that sections 110(2), (6), and (8); 111(a)(4); 112(b), (c), and (d); and 118(d)(3) evidence congressional intent to abrogate the states' immunity. These sections refer not to "states," but to "governmental bodies." As the fourth circuit noted in its recent opinion on this issue, "the phrase [governmental bodies] could be read as applicable only to local governments or to actions by government officials." *Richard Anderson Photography*, at 119. Plausible as BV's interpretation may be, *Atascadero* does not permit us to find abrogation based on ambiguous language.

## VI

Finally, BV argues that it is inconsistent with the statutory scheme governing copyright law to immunize states from suit for infringement. The Copyright and Patent Clause gives Congress the power "To promote the Progress of Science and Useful Arts by securing for limited Times to Authors and Inventors the *exclusive* Right to their respective Writings and Discoveries...." U.S. Const. Art. I, § 8, cl. 8 (emphasis added). Congress granted such an exclusive right in section 106 of the Copyright Act of 1976, which confers on a copyright owner a limited monopoly. The Supreme Court has suggested that even the states must honor a copyright owner's monopoly: "When Congress grants an exclusive right or monopoly, its effects are pervasive; no citizen or State may escape its reach." *Goldstein v. California*, 412 U.S. 546, 560, 93 S.Ct. 2303, 2312, 37 L.Ed.2d 163 (1973) (referring to the Copyright Act of 1909).

BV also argues that the policies behind the Eleventh Amendment are not implicated in this case. These policies include preventing a drain on state treasuries, *see Edelman v. Jordan*, 415 U.S. 651, 663–68, 94 S.Ct. 1347, 1355–58, 39 L.Ed.2d 662 (1974), and limiting the jurisdiction of the federal courts. *See Atascadero*, 473 U.S. at 242–43, 105 S.Ct. at 3147–47. The first policy is not at issue here because the states can avoid a drain on the treasury

from damages actions simply by complying with the federal copyright laws.

Nor is the second policy at issue here. Behind the eleventh amendment lies a concern for maintaining a balance of power between state and federal courts. *Id.* In most cases, "in determining whether Congress has abrogated the States' Eleventh Amendment immunity, the courts themselves must decide whether their own jurisdiction has been expanded." *Id.* at 243, 105 S.Ct. at 3147. Here, however, a holding that Congress has abrogated immunity in the Copyright Act could not expand the jurisdiction of the federal courts, because the federal courts already have *exclusive* jurisdiction over copyright actions. 28 U.S.C. § 1338(a). The Copyright Act, moreover, preempts all state copyright laws. 17 U.S.C. § 301(a). Thus, the choice is not between the federal forum and the state forum—it is between the federal forum and *no* forum.

The Supreme Court has never addressed the question of eleventh amendment immunity in a context where exclusive jurisdiction rests in the federal courts. Rather, it has assumed that when the eleventh amendment bars an action in federal court, a state remedy is still available: "[T]he issue is not the general immunity of the States from private suit ... but merely the susceptibility of the States to suit before *federal tribunals.*" *Atascadero*, 473 U.S. at 240 n. 2, 105 S.Ct. at 3146 n. 2 (emphasis and ellipsis in original) (quoting *Employees v. Missouri Dep't of Public Health & Welfare*, 411 U.S. 279, 293–94, 93 S.Ct. 1614, 1622–23, 36 L.Ed.2d 251 (1973) (Marshall, J., concurring in the result)).

■ Although we find these arguments compelling, we are constrained by the Supreme Court's mandate that we find an abrogation of eleventh amendment immunity only when Congress has included in the statute unequivocal and specific language indicating an intent to subject states to suit in federal court. Such language is absent from the Copyright Act of 1976. We recognize that our holding will allow states to violate the federal copyright laws with virtual impunity. It is for Congress, however, to remedy this problem.

The judgment of the district court is AFFIRMED.