595 A.2d 665

Catherine Baker KNOLL, Pennsylvania
State Treasurer, Petitioner,

v.

John F. WHITE, Jr., Secretary, Department
of Public Welfare, Respondent.

Commonwealth Court of Pennsylvania.

Heard July 8, 1991.

Decided July 10, 1991.

Designated as Opinion to be Reported July 22, 1991.

Mark L. Alderman, Philadelphia, for petitioner.

Kate L. Mershimer and Peter Zurflieh, Harrisburg, for respondent.

CRAIG, President Judge.

At present, with no appropriations act in effect to authorize state expenditures for the current fiscal year which began July 1, 1991, are the Pennsylvania Department of Public Welfare and the State Treasurer lawfully authorized and obligated to continue issuing payments to recipient clients with respect to cash-grant public assistance programs and related benefits:

(1) with respect to programs under which the funding comes chiefly from federal funds under federal law; and

(2) with respect to programs wholly funded by state revenues?

To those questions, this court's answer must be that, despite the current absence of statutory appropriation authorization, the state officials (1) are lawfully mandated, by the supremacy of federal law over state law in this sphere, to continue the federally funded public assistance payments and (2) in order to do so, are lawfully justified in continuing the state welfare payments operationally integrated with the federal programs, until such time as the state payment process can be made separate.

## THE PROCEEDINGS

State Treasurer Catherine Baker Knoll instituted this declaratory judgment action in this court's original jurisdiction against Secretary John F. White and his Department of Public Welfare to obtain a declaratory judgment with respect to the legality of the actions of the department and the treasurer, who are presently continuing to issue public assistance payments and benefits despite the absence of any current state appropriation authorization. In response to the treasurer's request for expedited relief under Pa. R.A.P. 1532, this court directed an accelerated pleading schedule and set the matter down for an expedited evidentiary hearing, the record of which is now complete.

The court has allowed intervention by Vernell Smith, a public assistance recipient, and also by welfare rights organizations of Philadelphia, Allegheny and Armstrong County—representing recipients—on behalf of the interests of General Assistance recipients.

The parties have brought the pleadings to closure by filing a petition for review, an answer and new matter to the petition, a reply to new matter, a motion for special relief, a response to that motion, and the petition to intervene.

Pursuant to evidentiary hearing, and the testimony, exhibits and stipulations placed on the record at that hearing, the court makes findings of fact:

## FINDINGS

1. Upon and after July 1, 1991, for the time being, there is no appropriations act—neither general, special, deficiency, stopgap, or otherwise—in effect to authorize expenditure of funds by the Commonwealth.

2. The administration of public assistance in Pennsylvania involves bi-monthly payments to recipients, administered in two ten-day cycles of payments in each month, initiated by payment voucher transmittals from the department and

carried out by the issuance of payments by the treasurer, along with related benefits.

3. Each day of that cycle involves the issuance of approximately 30,000 payments, totalling in value approximately $4.5 million dollars per day.

4. The involved public assistance programs are as follows:

General Assistance (GA) under state law, 62 P.S. §§ 401 et seq.;

State Blind Pension Trust (SBP) under state law, 62 P.S. §§ 501 et seq.;

Refugee Cash Assistance (RCA) under federal law;

Aid to Families With Dependent Children (AFDC) under federal Social Security Law, 42 U.S.C. §§ 601 et seq.;

5. Related benefits distributed in connection with public assistance payments include:

Food stamp authorizations-to-purchase, issued under federal law programs to recipients who may then obtain food stamps from issuing agents or contractors; and

Medical assistance identification cards, issued under federal and state law to permit recipients to obtain medical benefits during the period covered, also a federal program.

6. The department and treasurer issue public assistance payments in four different modes as follows:

Regular mail;

Supplemental mail;

Electronic funds transfer, to contracted agents who provide cash to recipients who come in person, with identification; and

Direct delivery of checks, also to contracted distribution centers who distribute the checks to recipients who appear in person with proper identification.

7. For efficiency, the department and treasurer operationally implement all four payment programs on a unified basis, rather than as four discrete payment channels, by maintaining all recipient information in a single database

for computer purposes. With respect to each day in the bi-monthly cycle, the department delivers computer tapes to the state treasurer, backed up by hard-copy listings for verification. Although the hard-copy listings identify each recipient with respect to program by a code letter, manual separation or reservation of checks or electronic payments for any specific program is not feasible because treasurer personnel cannot manually thus manipulate the daily volume of 30,000 payments and because the common database does not group the recipients of each program by consecutive groupings in either the electronic computerized listing or the hard-copy listings.

8. On each of the payment cycle days, the overnight computer runs by the department involve batch processing with approximately 70 interrelated, but different, applications programs applied to the common data base. Computer reprogramming to regroup all payment processes separately for each program, for the purpose of distinguishing state-funded programs from those primarily federally funded, would require extensive computer program rewriting, the basic work for which could be accomplished in not less than six weeks, with additional weeks required for testing, debugging and other completion work necessary for accuracy and proper auditing.

9. In addition to the time required to create new programs to process AFDC payments separately from GA and SBP payments, there would have to be new computer programs designed to issue medical assistance cards independently of GA payments if GA payments were stopped for the lack of state funding.

10. No computer program presently exists to calculate GA amounts for the resumption of payments of GA if such assistance is stopped for some period.

11. If operations were revised to continue payments of AFDC and RCA, but not GA, the food stamp entitlement of many GA recipients would increase, requiring additional new computer programming, as to food stamp increases, which does not now exist.

12. As affirmed by stipulations, the cessation of public assistance payments would result in disastrous hardship and inhumane living conditions for a great number of assistance recipients. For GA alone, over 145,000 persons in Pennsylvania are recipients with 26,000 of them being children. For the recipients, the GA payments are normally the only means for obtaining shelter, clothing, utility services and transportation, while temporarily unemployed or while applying for social security benefits. Although these recipients receive food stamps, they usually must also use money from their public assistance grants every month after food stamps are exhausted.

13. The department and stipulations by the parties confirm that a substantial fraction of GA recipients are actually entitled to federally funded AFDC benefits. It is estimated that this category includes 3,691 households, constituting about 11,073 persons. The department has an ongoing project to identify GA recipient households entitled to receive AFDC instead.

## DISCUSSION

### State Constitutional Mandate

Chief among the concerns prompting this action is Art. 3, § 24 of the Pennsylvania Constitution, which provides that "No money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officers...." The only exception, refunds of taxes or other charges paid but not legally due, is not applicable here.

The voucher transmittals by the department to the treasurer, in computerized and hard-copy form, constitute the required warrants, but the treasurer's concern is the absence of appropriation law authorization at the present time. Forwarding a memorandum of the Chief Counsel for the Secretary of the Budget, the department has urged that federally funded assistance payments should be continued

because of the supremacy of the federal mandate for their payment, over state statutory and constitutional provisions.

With respect to the state-funded assistance (GA and SBP) the facts on the record indicate that separation of state-funded assistance from federally funded assistance cannot be accomplished manually or by computer program revision within a period of less than six weeks. The intervenors further contend that, even if such separation were possible, it would violate the due process and equal protection rights of the recipients under the Fourteenth Amendment to the United States Constitution—rights superior to limitations in state statute and constitution.

Federally–Funded Assistance Mandated to Continue

The supremacy clause of the United States Constitution, U.S. Const. Art. VI, Cl. 2, makes the United States Constitution and federal laws the supreme law of the land governing anything to the contrary in state laws or state constitutions. *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947).

■ Under federal law, including 45 C.F.R. § 206.-10(a)(5)(i), the state, being committed to implement federally funded public assistance programs, must assure the continuation of that implementation. Budget impasses and the absence of state funding appropriations do not allow a state to forego its obligation to fund the federal AFDC program. *Coalition For Basic Human Needs v. King,* 654 F.2d 838 (1st Cir.1981). Federal district courts have followed the principle, as exemplified in the current Illinois budget impasse by *Beeks v. Bradley,* No. 91 C 4014 (N.D. Illinois, filed July 1, 1991).

■ Therefore, with respect to the AFDC and the RCA programs, where the majority of the funding is federal, the federal mandate, being supreme over the state constitutional requirement for appropriation authorization, warrants a declaration that the AFDC and RCA payments must be continued by the department and the treasurer.

The same principle applies to the medical assistance benefits distributed concurrently to assistance recipients in Pennsylvania. *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *Alabama Nursing Home Ass'n. v. Harris,* 617 F.2d 388 (5th Cir.1980). As long as a state remains in a program and accepts federal funds, it must follow the federal statutes. *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

Although a state may take proper steps to amend its state commitment, the state must comply with applicable notice regulations to do so. *Kimble v. Solomon,* 599 F.2d 599 (4th Cir.1979).

Therefore, with respect to the federally based programs—AFDC, RCA, Food Stamps and Medical Assistance—the Commonwealth of Pennsylvania, under its present commitments to the federal laws, is obligated to continue distribution to recipients, and the continuation of that distribution by the department and treasurer is lawful.

Cessation of State–Funded Payments Is Subject to Operational Separation From Federal Payments or Termination in Accordance With Due Process

The federal mandate applicable to AFDC and RCA has no direct effect upon the state-funded GA and SBP assistance programs. *Rosado.*

In *Shapp v. Sloan,* 480 Pa. 449, 391 A.2d 595 (1978), appeal dismissed 440 U.S. 942, 99 S.Ct. 1415, 59 L.Ed.2d 630 (1979), the Pennsylvania Supreme Court confirmed the subjection of state funds to state legislative control, upholding the validity of statutes which prohibit payments contrary to appropriation classifications.

However, the facts in this record indicate that conformity to the federal mandate cannot be achieved, at least immediately, without continuing the state-funded assistance which is operationally intertwined with the federal programs.

For sound and commendable reasons of efficiency, the department and treasurer have integrated all public assistance payments in a single computerized operation. On this

record, there is no contradiction of the fact that revision of the computer programs cannot be accomplished in less than six weeks.

The record also establishes that manual sorting is not feasible because of the high volume of checks produced daily, totalling 30,000. Moreover, the evidence shows that a substantial, but not fully identified, number of GA recipients are eligible for AFDC federal entitlement.

If GA payments could be stopped while AFDC payments were continued, the former GA recipients would also be affected in their ancillary participation in federal programs; for example, their food stamp entitlement under federal law would increase and alternative provision would have to be made to provide the federal medical assistance authorization to them. Computer reprogramming for these purposes also would require weeks.

*Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) holds that public assistance recipients are entitled, under due process, to timely and adequate notice of the termination of benefits. Such overriding due process rights under the federal constitution are applicable to the property interest in assistance benefits which is created by state law. *Hill v. O'Bannon*, 554 F.Supp. 190 (E.D.Pa.1982) persuasively has held that GA recipients have a property interest in the continued receipt of those benefits, so that cessation is under due process protection. The substantiality of the private property interest, *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is beyond dispute, in that it involves matters of subsistence and survival.

Nothing in the legal authorities indicates that the state can treat a suspension of payment—during a budget impasse with an intention or hope of resumption—as realistically different from any other termination.

With respect to the proportion of GA recipient households who could be entitled to AFDC benefits, proper notice necessarily would have to include information that, despite

cessation of GA payments, households with children have potential entitlement to the AFDC benefits proposed to be continued.

State policy is necessarily subordinate to conformity with federal constitutional guarantees. *See North Carolina State Board of Education v. Swann,* 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 (1971). Failure to enact needed state law cannot be a justification for violation of federal constitutional standards. *Newman v. State of Alabama,* 559 F.2d 283 (5th Cir.1977), rev'd in part, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

Therefore, conformity to the federal constitution requirements necessarily bars immediate cessation of GA and SBP payments. The department and treasurer must continue making those payments. However, the subjection of the state constitutional appropriations requirement to the practical necessities of federal law compliance cannot be tolerated indefinitely. Hence, the state officials must simultaneously embark upon necessary steps to (1) separate state fund programs from federal programs, at least for the duration of the present fiscal emergency, and (2) only after the mechanisms for such separation are fully completed, to precede cessation of GA and SBP benefits by affording due process by timely and adequate notice of that cessation, together with notice of available alternative entitlements.

There follows a judgment in accordance with this adjudication.

## ORDER

NOW, July 10, 1991, pursuant to petition for review in the nature of a request for declaratory judgment, other pleadings, evidentiary hearing, and legal argument, the following judgment is hereby ORDERED and DECLARED:

1. Because of the supremacy of federal law over state law and over Pa. Const. art. 3, § 24, arising from Commonwealth commitments to Assistance to Families with Dependent Children, Refugee Cash Assistance, Medical Assistance

and Food Stamps, it is hereby adjudged that the Department of Public Welfare and the State Treasurer (state agencies) are lawfully empowered and obligated to continue indefinitely the implementation of the above-named programs by issuance of payments, Medicaid cards and food stamp authorizations, even though no state appropriation act authorization is presently in effect; and

2. Because the implementation of state-funded assistance programs, namely General Assistance and State Blind Pensions (state programs), are operationally integrated with the federal programs listed in paragraph 1 above, by means of intertwined computer programs and a single unified database of recipient information, it is adjudged that conformity to the federal mandate identified in paragraph 1 above requires and lawfully empowers the state officials to continue implementation of these two state programs

until such time as (1) the state officials can develop and make operational separate computerized mechanisms for implementation of the state programs, and (after such mechanisms are fully complete and before suspending any state program payments) can give due notice to state program recipients of such suspension and alternative entitlements, if any; or

until such time as (2) independent legal authorization for state programs is restored by enactment of necessary state appropriation acts,

whichever, of (1) or (2) above, first occurs.

3. To minimize the period during which state program continuation is compelled by federal law conformity, the state officials are obligated by state law to pursue the matter described as (1) in paragraph 2 above, at least until the occurrence of the matter described as (2) in paragraph 2 above.

4. Pursuant to Pa.R.A.P. 1732, it is further ordered that no appeal from this judgment shall operate automatically to effect a supersedeas.