Shirley DAVIDSON; Kimberly Paull; and Melissa Baxter, a minor, by and through her next friend, Gloria Shore, on behalf of themselves and all others similarly situated, Appellants (Plaintiffs),

v.

Gary SHERMAN, and/or his successor, in his official capacity as Director of the Wyoming Department of Family Services, and/or its successor, Appellee (Defendant).

No. 92–63.

Supreme Court of Wyoming.

March 18, 1993.

J. Duane Myres (argued), and H.B. Harden, Jr., Casper, for appellants.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Barbara L. Boyer (argued), Sr. Asst. Attys. Gen., and D. Stephen Melchior, Asst. Atty. Gen., for appellee.

Before MACY, C.J., THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J. (Retired).

CARDINE, Justice.

Shirley Davidson, Kimberly Paull, and Melissa Baxter, appellants, filed suit seeking a declaratory judgment that the Wyoming Department of Family Services, as administrator of the Aid to Families with Dependent Children Program, must set the standard of need at a level commensurate with actual need. Appellants also, for themselves and others similarly situated, sought to recover the amount of child support payments wrongfully retained by the State when it employed the incorrect standard of need. The district court, citing its lack of authority because of separation of powers, refused to correct the standard of need and entered summary judgment in favor of the State.

We reverse and remand for further proceedings.

Appellants state the issues as follows:

I. Whether the trial court committed reversible error by granting Appellee/Defendant's (hereinafter Defendant) Motion for Summary Judgment that dismissed Appellant/Plaintiff (hereinafter Plaintiff), Shirley Davidson's, individual claim when the Court's Decision Letter stated "The Plaintiffs ask for a finding of amounts due for the named Plaintiffs, however, the Court finds that the amount due, if any, turns upon question of fact and Summary Judgment is denied."

II. Whether the trial court committed reversible error by failing to grant Plaintiff, Shirley Davidson's, individual claim for $1000 in underpaid AFDC grant payments from October, 1984 through January, 1987 pursuant to stipulated agreement of the parties.

III. Whether the trial court committed reversible error by failing to declare the stipulated remaining issue in Plaintiff, Shirley Davidson's, individual claim. The sole issue for the court's determination is whether federal and state laws 42 U.S.C.A. § 657, 45 CFR § 302.51, W.S. § 20-6-106(n) and W.S. § 20-6-215(b) require Defendant to account for all child support collected and held in trust as current month's child support first and only after payment of current child support obligations can Defendant treat the child support collected as against the back child support obligation and/or Judgment. If the money collected from John's father is to be credited against current child support obligation first then Defendant has stipulated that they owe Plaintiff, Shirley Davidson, child

support benefits and $50 child support disregard benefits in the amount of $3,069.20.

IV. Whether the trial court committed reversible error by finding that the Court has no legal right or authority to correct the Standard of Need (hereinafter SON) from August 4, 1986 to October 1, 1990 to the correct and accurate SON amount of $654 for an AFDC family size three.

V. Whether the trial court committed reversible error in failing to find that Plaintiffs' rights were violated by Defendant's confiscating and using the children's child support trust funds without accurate accounting in accordance with Federal and State laws is a violation of the State and Federal Laws Amendment XIV of the Constitution of the United States and the Wyoming Constitution Article 1, § 6.

VI. Whether the trial court committed reversible error in finding that Plaintiffs had failed to timely certify the alleged Class action claim when all evidence is that the parties hereto agreed not to certify the class until after the SON issue was resolved. Clearly, it is premature for the Court to limit this action to the three named-Plaintiffs when Defendant has already stipulated in two other filed cases that they are members of the class that is yet to be certified, if the certification step even becomes necessary.

### STANDARD OF REVIEW

When reviewing the trial court's grant of summary judgment, we examine the case in the same manner as the trial court. *Moncrief v. Harvey*, 816 P.2d 97, 102 (Wyo.1991). Our task requires that we make a dual finding that no genuine issue of material fact exists, and that the prevailing party was entitled to judgment as a matter of law. *Id.* When considering questions of law, we accord no special deference to the district court's determination. *Id.; Matter of North Laramie Land Co.*, 605 P.2d 367, 373 (Wyo.1980).

### BACKGROUND

The Aid to Families With Dependent Children (AFDC) program is one of three major categorical public assistance programs established by the Social Security Act of 1935. *King v. Smith*, 392 U.S. 309, 313, 88 S.Ct. 2128, 2131, 20 L.Ed.2d 1118 (1968). 42 U.S.C. § 601 outlines the program's goals:

For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

The AFDC program is based on a scheme of cooperative federalism under which the states provide monthly or bimonthly cash grants for basic maintenance to needy families with dependent children and the federal government reimburses fifty to eighty percent of the states' program costs. *King*, 392 U.S. at 316, 88 S.Ct. at 2133; Adele M. Blong & Timothy J. Casey, *AFDC Program Rules for Advocates: An Overview*, 23 Clearinghouse Rev. 802 (Nov. 1989). States freely elect whether to participate in the federally funded program, but once a state decides to participate, it must comply with the federal laws governing the program. *King*, 392 U.S. at 316–17, 88 S.Ct. at 2133; *Rosado v. Wyman*, 397 U.S. 397, 408, 90 S.Ct. 1207, 1216, 25 L.Ed.2d 442 (1970). Federal law requires a state to designate a single state agency to administer the AFDC benefits program or to supervise agencies of local government, usually county agencies, who administer the program. 42 U.S.C. § 602(a)(3), 45 C.F.R. §§ 205.100, 205.101.

Two basic factors enter into the determination of what AFDC benefits will be paid to a family. First, a standard of need must be established to provide a yardstick for

measuring who is eligible for public assistance. *Rosado*, 397 U.S. at 408, 90 S.Ct. at 1216. Second, it must be decided what level of benefits will be paid to families in need of assistance. *Id.* Congress has granted the states a great deal of discretion in making both of these determinations. *Id.* Thus, diversity exists among the states both in their standards of need and their levels of benefits actually paid. *Id.*

The standard of need and the benefit level are separate considerations. The level of benefits aspect of the program is subject to different limitations than is the state's determination of the standard of need. *State of Minn. by Humphrey v. Heckler*, 739 F.2d 370, 374 (8th Cir.1984). The standard of need is intended to reflect the actual cost of a subsistence level of existence; accordingly, the states' discretion in establishing this standard stems from the recognition of the variations among the states in what qualifies as an item of need, as well as the valuation of those items. *Id.* A state may not obscure the standard of need by arbitrarily establishing a standard of need that does not reflect actual need. *Rosado*, 397 U.S. at 413, 90 S.Ct. at 1218.

The states' discretion in setting their level of benefits, however, is much broader; it is intended to allow states to factor in budgetary and policy concerns. *Rosado*, 397 U.S. at 413, 90 S.Ct. at 1218; *Heckler*, 739 F.2d at 374. Therefore, while a state must set its standard of need at a level reflecting actual need, it may, to accommodate budgetary realities and policy considerations, reduce accordingly the level of benefits actually paid. *Rosado*, 397 U.S. at 413, 90 S.Ct. at 1218.

In concluding that 42 U.S.C. § 602(a)(23) requires states to set their standards of need at levels reflecting actual need, the United States Supreme Court ascribed the following purpose to that provision:

> It has the effect of requiring the States to recognize and accept the responsibility for those additional individuals whose income falls short of the standard of need as computed in light of economic realities and to place them among those eligible for the care and

training provisions. Secondly, while it leaves the States free to effect downward adjustments in the level of benefits paid, it accomplishes within that framework the goal, however modest, of forcing a State to accept the political consequence of such a cutback and bringing to light the true extent to which actual assistance falls short of the minimum acceptable. Lastly, by imposing on those States that desire to maintain "maximums" the requirement of an appropriate adjustment, Congress has introduced an incentive to abandon a flat "maximum" system, thereby encouraging those States desirous of containing their welfare budget to shift to a percentage system that will more equitably apportion those funds in fact allocated for welfare and also more accurately reflect the real measure of public assistance being given.

*Rosado*, 397 U.S. at 413–14, 90 S.Ct. at 1218.

The AFDC program provides aid to families whose "countable income" falls below the standard of need. 42 U.S.C. § 602(a)(7)(A); *Quarles v. St. Clair*, 711 F.2d 691, 694 (5th Cir.1983). Before 1975, monthly countable income included child support payments the AFDC parent received from the divorced or otherwise absent parent. *Id.* In 1975, the federal law was amended to provide that child support payments would no longer be included in countable income. 42 U.S.C. § 602(a)(26); *Quarles*, 711 F.2d at 694. Instead, the state could provide that, as a condition of eligibility for aid, each applicant or recipient must assign to the state their rights to child support payments. 42 U.S.C. § 602(a)(26)(A). The child support payments assigned to the state are then distributed according to 42 U.S.C. § 657.

The first fifty dollars of any monthly payment is to be paid to the family without affecting its eligibility for assistance. 42 U.S.C. § 657(b)(1). This fifty dollar payment is referred to as the "fifty dollar disregard." Adele M. Blong & Timothy J. Casey, *AFDC Program Rules for Advocates: An Overview*, 23 Clearinghouse Rev. 802, 808 (Nov. 1989). Amounts re-

maining after the fifty dollar disregard are allocated among the state and federal governments and the AFDC family according to 42 U.S.C. § 657(b)(2) through (4).

In 1975, when Congress enacted these amendments, twelve states, including Wyoming, were "gap" states. *Quarles,* 711 F.2d at 702. Gap states were those states which could not afford to fund the entire need of a family; a gap existed between the standard of need and the amount of assistance the state provided. *Id.* Prior to 1975, these gap states permitted AFDC families to fill this gap (up to the standard of need) with private income, including child support payments, without affecting their eligibility for AFDC assistance. *Id.* After the 1975 amendments, the child support payments were to be assigned to the state with as little as fifty dollars (the fifty dollar disregard) being returned to the AFDC family, an amount insufficient to fill the gap. Thus, the family suffered a loss in income.

Congress recognized this problem when it considered the 1975 amendments, and it therefore included an additional provision intended to ameliorate the harsh effect of the child support assignment and reimbursement provisions. *Quarles,* 711 F.2d at 695. Thus, 42 U.S.C. § 602(a)(28) provided that:

> any portion of the amounts collected in any particular month as child support ... which [prior to the 1975 amendments] would not have caused a reduction in the amount of aid paid to the family if such amounts had been paid directly to the family, shall be added to the amount of aid otherwise payable to such family....

This payment is termed a "supplemental payment." Adele M. Blong & Barbara Leyser, *An Explanation of Fill the Gap Budgeting as Used in the AFDC Program,* 23 Clearinghouse Rev. 153, 156 (June 1989).

## WYOMING'S AFDC PROGRAM

■ Wyoming has participated in the AFDC program since the Wyoming Legislature first authorized the state's participation in 1937. *See* W.S. 42–2–104. The Wyoming Department of Family Services is the single state agency charged with ad-

ministering the state's AFDC program. *See* W.S. 42–1–101 and 9–2–2006. Although the Department of Family Services administers the program, W.S. 42–2–104(c) provides that the legislature shall establish the standard of need and the payment levels within the department's budget appropriation.

Prior to the implementation of the 1975 amendments to the Social Security Act outlined above, Wyoming was a gap state. Shortly after the 1975 amendments to the Act, Wyoming began setting its standard of need and payment levels at the same level, thereby eliminating the gap. It is from this practice that this dispute arises.

Appellants challenge this practice for the years 1986 to 1990. In 1986 appellee requested that the Wyoming Department of Fiscal Control conduct a study to determine the actual standard of need for Wyoming. The Department completed the study reporting $654.00 as the accurate standard of need amount for a family of three. Appellee reported this finding to the legislature who, nonetheless, set the standard of need at $360.00, a level equal to the state's benefit level. This practice of disregarding the actual standard of need, and instead setting it at a level equal to the benefit level, continued until 1990, when the legislature increased the standard of need to $734.00, with the benefit level set at $360.00. By eliminating the gap between the standard of need and the benefit level, the state eliminated the need to make supplemental payments to the AFDC families. It also reduced the number of families eligible for benefits.

We hold that appellee's practice of administering the AFDC program with the standard of need arbitrarily set equal to the benefit level violates federal law and must be discontinued. Federal law, specifically 42 U.S.C. § 602(a)(23), requires that states set their standard of need at a level commensurate with actual need. When the state arbitrarily established a standard of need at other than actual need, it violated the requirement of the federal law.

The state, in administration of its AFDC program in violation of this federal law,

abrogated its responsibilities under the program. As noted earlier, when Congress enacted 42 U.S.C. § 602(a)(23) requiring states to update their standards of need, it intended that participating states assist families who lacked income and resources sufficient to provide a subsistence level of existence. *Rosado,* 397 U.S. at 413, 90 S.Ct. at 1218. To fulfill this mandate of assisting truly needy families, the state must determine eligibility on the basis of an accurate standard of need. If the state can arbitrarily choose a figure to represent its standard of need, it can effectively exclude families actually in need of assistance, *i.e.,* those whose income and resources fall below the subsistence level of a correctly determined standard of need.

The second goal of 42 U.S.C. § 602(a)(23), that of forcing a state to accept the political consequences of its failure to fund the entire need of AFDC families and that of illuminating the true extent to which actual assistance falls short of the minimum acceptable, clearly remains unachieved if a state establishes its standard of need at a level lower than actual need. If a state can arbitrarily set its standard of need at the level it intends to fund, it can camouflage the extent to which it fails to fund the need of AFDC families. For example, in 1986 the actual standard of need, calculated after study, was $654.00. The legislature disregarded this figure and arbitrarily set the standard of need at the benefit level of $360.00. With the standard of need set at $360.00 and the benefit level also set at $360.00, the state could report that it had funded the entire need. This obviously paints a distorted picture. Not only did the state not fund the entire need of those families eligible for benefits, it excluded families who should have received assistance—those whose income fell between $360.00 and the subsistence level of $654.00.

■ In addition to its failure to achieve the goals outlined above, the state wrongfully retained child support dollars in violation of 42 U.S.C. § 602(a)(28). If, during the years in dispute, Wyoming had set its standard of need at the actual level of subsistence, a gap would have existed between the standard of need and the state's benefit level. For those families whose rights to child support had been assigned to the state pursuant to 42 U.S.C. § 602(a)(26), Congress intended this gap to be filled by the assigned child support payment in the form of a supplemental payment. 42 U.S.C. § 602(a)(28); *Quarles,* 711 F.2d at 695. Wyoming deflected the requirement to make supplemental payments by artificially closing the gap; it arbitrarily lowered its standard of need to the level of benefits to be paid. Consequently, several AFDC families were wrongfully deprived of much needed child support payments.

42 U.S.C. § 602(a)(28) requires the supplemental payment; 45 C.F.R. § 232.21 provides for the computation of the payment. The following hypothetical example illustrates the effect of Wyoming's failure to set an accurate standard of need and hence its failure to make appropriate supplemental payments. For purposes of this illustration, we assume total child support payments to be $250.00 per month, earned income to be $0.00 per month, standard of need to be $654.00 and an AFDC benefit level of $360.00. It is helpful to first define relevant terms. They are:

*Standard of Need:* The dollar amount representing a subsistence level of assistance for a family unit.

*AFDC Benefit Level:* The maximum dollar amount of assistance available under the program.

*AFDC Maximum Grant:* The lesser of either the AFDC benefit level or the standard of need minus countable income.

*Pre–1975 Countable Income:* Earned income less statutory deductions plus child support less the $50.00 disregard.

*Post–1975 Countable Income:* Earned income less statutory deductions. Post–1975 countable income does not include child support payments.

*Disposable Income:* Pre–1975 countable income plus AFDC maximum grant.

The steps in calculating the supplemental payment are as follows:

Step 1: Determine *disposable income:* Pre–1975 countable income plus AFDC maximum grant.

```
Pre–1975 countable income:
  Earned Income                              $  0.00
  Child Support ($250.00–50.00)                200.00

  Total                                      $200.00

AFDC Maximum Grant:  The lesser of:
  AFDC Benefit Level                         $360.00

       or
  Standard of Need                           $654.00
  Minus countable income                       200.00

                                             $454.00
```

$360.00 is less than $454.00, therefore, disposable income is $360.00 plus $200.00 or $560.00.

Step 2: Determine the *AFDC Maximum Grant* using post–1975 countable income:

```
Post–1975 countable income: ·
  Earned Income                              $  0.00
  Child Support (post–75 don't count it)        0.00

  Total                                      $  0.00

AFDC Maximum Grant:  The lesser of:
  AFDC Benefit Level                         $360.00

       or
  Standard of Need                           $654.00
  Minus countable income                        0.00

                                             $654.00
```

$360.00 is less than $654.00, therefore, the AFDC Maximum Grant from step 2 is $360.00.

Step 3: Calculate the supplemental payment: subtract the figure in step 2, the AFDC Maximum Grant using post–1975 income, $360.00, from the figure in step 1, disposable income, calculated at $560.00.

```
Step 1:  Disposable Income                   $560.00
Step 2:  AFDC Maximum Grant                    360.00

Supplemental Payment                         $200.00
```

This hypothetical family unit is entitled to $610.00 [AFDC Grant: $360.00, plus child support disregard: $50.00, plus supplemental payment: $200.00]. As Wyoming administered its AFDC program for the years 1986–1990, the family would have been denied the supplemental payment of $200.00, receiving only $410.00 [AFDC Grant: $360.00, plus child support disregard: $50.00].

We wish to emphasize that the $200.00 payment (to continue with our above illustration) is not money which originated in the state treasury. The $200.00 is that portion of the $250.00 child support payment, paid by the absent parent and assigned to the state, which should have been refunded to the family in the form of a supplemental payment.

■ Appellants allege that the child support payments which should have been paid to the family in the form of supplemental payments have instead been used to cover the state's administrative expenses. The record does not clearly reveal how the state used the money. However, to whatever expenses the state applied the assigned child support payments, it did so incorrectly. The child support payments cannot be used to reimburse the state and federal governments for their expenses until all appropriate payments have been made to the family in accordance with 42 U.S.C. §§ 602(a)(28) and 657. Appellants are entitled to recover child support payments wrongfully withheld.

Appellee essentially admits the above-outlined defects in Wyoming's AFDC program, but asserts several defenses. Appellee first argues that it lacks the authority to alter the standard of need or the benefit level because W.S. 42–2–104(c) reserves this determination to the legislature. The department contends that it fulfilled its statutory obligation when it reviewed the standard of need and recommended the appropriate level of need to the legislature.

Appellee may have fulfilled its obligation under the state statute, but that is not at issue in this dispute. The mandate at issue in this case is the *federal* requirement that a state set its standard of need at a level reflecting actual need. As noted earlier, once a state elects to participate in the AFDC program, it must comply with the federal mandates. If a conflict exists between the state plan and federal law, the federal law preempts the state statute. *King,* 392 U.S. at 333, 88 S.Ct. at 2141; *Rosado,* 397 U.S. at 420, 90 S.Ct. at 1222.

■ Federal law requires that a single state agency administer the AFDC program. In Wyoming, that agency is the Department of Family Services. The Department of Family Services must administer the AFDC program in accordance with federal law, including the requirement that the standard of need reflect actual need. If the agency, in administering the pro-

gram, finds a conflict between state and federal requirements, the agency must choose the course of action mandated by federal law. In this instance, it means the department must employ an accurate standard of need when determining eligibility of AFDC applicants and when calculating supplemental payments, making adjustments elsewhere to accommodate the state legislature's budget appropriations.

Federal and state courts have routinely held that neither budget impasses nor the absence of state funding appropriations justifies a state in delaying or withholding AFDC benefits owed to eligible families. Sandra Hauser, *Securing Continued AFDC Benefits During a State Budget Crisis*, 26 Clearinghouse Rev. 411 (August 1992). *See also Coalition for Basic Human Needs v. King*, 654 F.2d 838 (1st Cir.1981); *Pratt v. Wilson*, 770 F.Supp. 539 (E.D.Cal.1991); *Knoll v. White*, 141 Pa. Cmwlth. 188, 595 A.2d 665 (1991); *Coalition for Economic Survival v. Deukmejian*, 171 Cal.App.3d 954, 217 Cal.Rptr. 621 (1985); *Alabama Nursing Home Ass'n v. Califano*, 433 F.Supp. 1325 (M.D.Ala.1977). These courts have reasoned that a state's election to participate in the AFDC program obligates it to comply with the federal statutes, and inadequate funding does not excuse failure to comply. As one court emphasized:

> If a state could evade the requirements of the [Social Security] Act simply by failing to appropriate sufficient funds to meet them, it could rewrite the congressionally imposed standards at will. The conditions which Congress has laid down ... would be utterly meaningless.

*Alabama Nursing Home Ass'n*, 433 F.Supp. at 1330.

This same reasoning can be extended to the requirement that the standard of need reflect actual costs. If the department can bypass this requirement by simply citing the legislature's failure to act on its recommendations, the state can effectively rewrite this congressionally imposed standard. As long as the state continues to participate in the federal AFDC program and continues to accept federal monies for its program, federal law controls, and the department must make eligibility determi-

nations and supplemental payment calculations using the appropriate standard of need.

■■ Appellee next contends that appellants' claims have been rendered moot by the 1990 Legislature's adoption of an accurate standard of need. We reject this contention. We have many times held that we will dismiss a case when, pending appeal, an event occurs which renders a cause moot and makes a determination of the issues unnecessary. *Mari v. Rawlins Nat'l Bank of Rawlins*, 794 P.2d 85, 89 (Wyo.1990); *Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Comm'n*, 693 P.2d 227, 233 (Wyo.1985). We recognize an exception to this principle, however, when the case presents a controversy capable of repetition yet evading review. *Natrona County School Dist. No. 1 v. Ryan*, 764 P.2d 1019, 1031 (Wyo.1988); *Arland v. State*, 788 P.2d 1125, 1126 (Wyo.1990). One need look no further than the comments of state legislators reported in a Wyoming newspaper with state-wide circulation, the *Casper Star–Tribune*, to discern that this controversy is exceedingly capable of repetition. *See, e.g., Casper Star–Tribune*, January 6, 1993 p. B1; January 16, 1993 p. C1; February 10, 1993 p. A1.

State lawmakers consistently target the standard of need when searching for ways to accommodate budgetary constraints. This manipulation of the standard of need evades review because the legislature can always establish the appropriate standard just prior to this court's review. For this reason, and because this case involves questions of compelling public interest, we will not dismiss for mootness.

■ Appellee next argues that the separation of powers provision of the Wyoming Constitution, Article 2, § 1 as well as Article 3, § 33, prohibits this court from interfering with the legislature's determination of the standard of need. Article 2, § 1 provides:

> The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of

powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Article 3, § 33 concerns revenue raising. Since the standard of need is not a revenue raising device, but rather may affect appropriations, we assume appellee intended to cite Article 3, § 35 which reads:

Except for interest on public debt, money shall be paid out of the treasury only on appropriations made by the legislature, and in no case otherwise than upon warrant drawn by the proper officer in pursuance of law.

In holding that the Department of Family Services must employ an accurate standard of need in administering the AFDC program, we do not invade the provinces of either the executive or legislative branches. We have not ordered the state to participate in the federal program; we have not ordered the department to set its standard of need at a particular level; nor have we even ordered the department to employ a particular methodology in determining the accurate standard of need. Finally, we have not ordered the state to maintain a particular benefit level, and therefore do not order an increase in appropriations. We have reviewed the federal law, and we have determined that appellee has failed to comply with that law. Interpreting law and reviewing compliance with the law are both functions committed to the judicial branch.

We next address the dispute surrounding the certification of the plaintiff class. The record provides no evidence of what the parties agreed to concerning the identification and certification of the class. We reverse the district court's summary denial of class certification and remand for a determination of the propriety of certification of the class.

In summary, we reverse the decision of the district court and hold that the standard of need must be set at a level reflecting actual need. We remand for findings of fact to determine the actual standard of need for the years 1986 to 1990 and for a determination of the monetary relief in the form of back supplemental payments to which the named plaintiffs, and their class, if certified, are entitled. Because we are reversing the district court's order, we need not address the questions regarding the validity of the amended order.

Reversed and remanded.