Lisa Marie STANBERRY, Gale Yvonne Schnee, Carole Palmer, Michelle Weik, Cathleen Lee McCann, and Sandra C. Patterson, individually and on behalf of a class of persons similarly situated, Plaintiffs–Appellants,

and

Johnna Ruder, Katherine Ann Wilson, Jane Mari Back, and Deborah Campbell, Plaintiffs,

v.

K. Gary SHERMAN, Director of Wyoming Department of Family Services; The State of Wyoming, Defendants–Appellees.

No. 94–8048.

United States Court of Appeals, Tenth Circuit.

Jan. 24, 1996.

Walter Urbigkit, Cheyenne, Wyoming, for Plaintiff–Appellants.

Patrick E. Hacker, Cheyenne, Wyoming, for Defendants–Appellees.

Before BRISCOE, COFFIN[1] and BARRETT, Circuit Judges.

COFFIN, Senior Circuit Judge.

Six single mothers who receive public assistance appeal from a summary judgment in favor of the state of Wyoming and the director of its Department of Family Services in a suit, brought under 42 U.S.C. § 1983, challenging various policies of the state in implementing the Aid to Families With Dependent Children (AFDC) program, 42 U.S.C. §§ 601–687. We affirm.

Specifically, appellants claimed that (1) failure by Wyoming to adopt a "standard of need" (SON) reflecting current living costs violated federal law and improperly skewed a reduction in benefits authorized by the state legislature; (2) a correct standard of need would entitle them to receive additional child support funds collected by the state from absent fathers; (3) there has been improper accounting and mismanagement of such child support funds; (4) a number of welfare "reforms" enacted by the Wyoming legislature in 1993 violate federal statutory and constitutional provisions; and (5) incomplete discovery should have precluded summary judgment.

1. The Honorable Frank M. Coffin, United States Senior Circuit Judge for the First Circuit, sitting by designation.

*Standard of Need*

The amount of AFDC benefits paid to a family is determined by two variables: (1) the standard of need, which is an amount set by a state reflecting basic subsistence needs and which is considered a "yardstick" of eligibility, and (2) the formula that is applied to the SON to determine the actual level of benefits. *Rosado v. Wyman,* 397 U.S. 397, 408, 90 S.Ct. 1207, 1215–16, 25 L.Ed.2d 442 (1970). At the time relevant to this litigation, the standard of need in Wyoming was subject to reevaluation every two years. In 1989 a recomputed SON was adopted, applicable to 1990 and 1991. In 1991 and 1993, updated SONs were computed but never adopted or used as the basis for budgeting. Instead, in 1993, the legislature effected a reduction in benefits, limiting them to 87.5% of the 1989 SON. Had the 1993 SON been used, argue appellants, the actual level of benefits would appear as a much smaller percentage of the amount needed; by the same token the visible reduction would be dramatically larger than 12.5%. The thrust of appellants' claim is that although the state is permitted to make any across the board ratable reduction, it must be based on a current SON, in order to reflect accurately the extent to which the state is not meeting actual needs.

The district court considered a recent decision of the Wyoming Supreme Court, *Davidson v. Sherman,* 848 P.2d 1341 (Wyo.1993), in which the court, dealing with Wyoming's then practice of arbitrarily equating the standard of need figure with the level of benefits, held, as a matter of federal law, that "the standard of need must be set at a level reflecting actual need." *Id.* at 1349. The district court in this case, however, ultimately disagreed with *Davidson* and concluded that federal law since 1969 has not required states to adjust standards of need to reflect changes in living costs. It noted the legislative history set forth in *Guidice v. Jackson,* 726 F.Supp. 632 (E.D.Va.1989), *aff'd,* 915 F.2d 1564 (4th Cir.1990), and also cited other circuits that have viewed the relevant stat-

ute, as interpreted in *Rosado,* as mandating only a one-time adjustment.[2]

The district court found even more "troublesome" an argument that does not appear in *Davidson:* that the statute governing state obligations as to SONs, 42 U.S.C. § 602(h)[3], does not create a right of action enforceable by plaintiffs-appellants. It relied on an unpublished decision of this court, *Johnson v. Beye,* 17 F.3d 1437, 1994 WL 64357 (10th Cir.1994), in which AFDC recipients similarly sought to compel adoption of a more realistic standard of need. The district court in *Johnson* had relied on *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), and *Wright v. Roanoke Redevel. and Hous. Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), to hold that 42 U.S.C. § 602(h) imposed no "requirement that [states] do anything with the reevaluation save make the required reports" and therefore created no enforceable rights, privileges, or immunities. We agreed, saying:

> Section 1983 provides a "cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 508 [110 S.Ct. 2510, 2516–17, 110 L.Ed.2d 455] (1990). In *Maine v. Thiboutot,* 448 U.S. 1, 4 [100 S.Ct. 2502, 2504, 65 L.Ed.2d 555] (1980), the Supreme Court observed that "suits in federal courts under 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of the participating States."
>
> Section 1983 "... speaks in terms of 'rights, privileges, or immunities,' not violations of federal law." *Wilder,* 496 U.S. at 509 [110 S.Ct. at 2517] (quoting *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106 [110 S.Ct. 444, 448–49, 107 L.Ed.2d 420] (1989)). "In deciding whether a federal right has been violated,

we have considered whether the provision in question creates obligations binding on the government ... [and] whether the provision in question was 'intend[ed] to benefit' the putative plaintiff." *Golden State Transit Corp.,* 493 U.S. at 106 [110 S.Ct. at 448] (citations omitted). Section 1983 "is not available to enforce a violation of a federal statute where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of 1983." *Suter v. Artist M.,* [503 U.S. 347, 355], 112 S.Ct. 1360, 1366 [118 L.Ed.2d 1] (1992) (quoting *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 430 [107 S.Ct. 766, 773–74, 93 L.Ed.2d 781] (1987)).

We then quoted with approval the district court's reading of 42 U.S.C. § 602(h):

> It's straightforward. It requires only the reevaluation of the need and payment standards and the filing of the report.... There is no requirement that the states are just in meeting payment standards as a result of the reevaluation, and there's no requirement that they do anything with the reevaluation save make the required reports.
>
> *    *    *    *    *    *

We concluded:

> We hold that the district court properly relied upon *Suter* and *Wright* in dismissing appellants' 1983 cause of action for failure to state a claim upon which relief can be granted.

As it happens, we cannot simply rest on this earlier opinion of ours. Oddly—and unhappily—neither side has called our attention to a Congressional amendment to the Social Security Act in 1994, enacted in an adverse reaction to *Suter. See* 42 U.S.C. § 1320a–2. Basically, the Congress disavowed *Suter's* approach, while not purporting to change the

---

2.  *See Largo v. Sunn,* 835 F.2d 205, 208 (9th Cir.1987); *Everett v. Schramm,* 772 F.2d 1114, 1115 (3d Cir.1985); *Bourgeois v. Stevens,* 532 F.2d 799, 803 (1st Cir.1976). None of these authorities was reflected in *Davidson.*

3.  That provision states in part:

> Each state shall reevaluate the need standard and payment standard under its plan at least once every 3 years, in accordance with a schedule established by the Secretary, and report the results of the reevaluation to the Secretary and the public at such time and in such form and manner as the Secretary may require.

decision. It also reaffirmed the approach taken in Supreme Court decisions prior to *Suter*. This requires us briefly to analyze both the case and the amendment to see what, if any bearing, the latter has on the case before us.

*Suter* involved a section of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 671(a)(15), which, as a precondition of federal reimbursement, required a state plan to provide that "reasonable efforts" be made to prevent removal of a child from his home before placing him in foster care. The Court cited all of the cases appearing in the above quoted passages from our earlier opinion, plus *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). 503 U.S. at 355–357, 112 S.Ct. at 1366–67. It then proceeded to analyze the statute in detail. In contrast to *Wright, id.* at 357, 112 S.Ct. at 1366–67, and *Wilder, id.* at 359, 112 S.Ct. at 1368, where both statute and regulations had set forth factors to be considered in calculating rent (*Wright*) or reimbursement (*Wilder*), the Court found "[n]o further statutory guidance ... as to how 'reasonable efforts' are to be measured" and thus that states could exercise discretion "within broad limits." *Id.* at 360, 112 S.Ct. at 1368–69. Yet the phrase was not "a dead letter" in the light of various enforcement mechanisms contained in the statute. *Id.* at 360–361, 112 S.Ct. at 1368–69. The only requirement placed on a state, therefore, was that it submit a plan to be approved by the Secretary. *Id.* at 361, 112 S.Ct. at 1369. The Court concluded that the statutory language in context did not "unambiguously confer an enforceable right upon the Act's beneficiaries." *Id.* at 363, 112 S.Ct. at 1370.

District courts subsequently differed in their opinion as to whether *Suter* changed prior law. In *Jeanine B. By Blondis v. Thompson*, 877 F.Supp. 1268, 1282–83 (E.D.Wis.1995), the court felt that *Suter* "announced a new approach to federal funding statutes requiring plans, stating that the only private right arising from such statutes is a right to the plan itself, and not to the implementation of the plans' required provisions." In *Harris v. James*, 883 F.Supp. 1511, 1519 (M.D.Ala.1995), the court, after reciting the above reasoning of the Court, stated that the

points on which the Court relied "bring new considerations to the analysis of the appropriateness" of invoking section 1983 to remedy violations of a federal statute. On the other hand, the D.C.Circuit in *LaShawn A. v. Barry*, 69 F.3d 556, 569–70 (D.C.Cir.1995), citing earlier cases from the Second and Sixth Circuits, found the Court's central concern the usual one of "the Act's vagueness" and "certainly does not announce a general rule that mandatory inclusion in a plan demonstrates intent not to create an enforceable right."

It is not surprising, therefore, that Congress felt, rightly or wrongly, that something had been added to the law that should not remain. So it enacted the following amendment in October of 1994, providing that in all pending and future actions

> brought to enforce a provision of the Social Security Act, such provision is not to be deemed unenforceable because of its inclusion in a section of the Act requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in *Suter* ..., but not applied in prior Supreme Court decisions respecting such enforceability; provided, however, that this section is not intended to alter the holding in *Suter v. Artist M.* that section 671(a)(15) of the Act is not enforceable in a private right of action.

42 U.S.C. § 1320a–2 (amended October 20, 1994).

We need not tarry longer. Whether or not *Suter* added to prior Court analysis, which addition is no longer to be followed, is irrelevant in the instant case. The prior case law, which we have cited, clearly indicates that 42 U.S.C. § 602(h) falls far short of creating an enforceable right. It does not approach the specificity and judicial enforceability of a "reasonable efforts" requirement. We therefore reaffirm our conclusion in *Johnson v. Beye*, and hold that 42 U.S.C. § 602(h) creates no right enforceable under section 1983.

*Supplemental Benefits*

■ Appellants' second claim is based upon a singularly comprehension-resistant

provision relating to child support payments, 42 U.S.C. § 602(a)(28), which was part of a series of 1975 amendments to the Social Security Act affecting the AFDC program.[4] *See Davidson*, 848 P.2d at 1344–45. Before the amendments, AFDC families in "gap" states like Wyoming—i.e., where there was a gap between the amount of state assistance and the standard of need—could supplement their resources (up to the standard of need) with private income, including child support payments, without affecting their eligibility.

Under the amendments, states may require that recipients of AFDC funds assign child support payments to the state, with only a small portion being returned to the families. This, of course, would cause a loss of income to the families. Section 602(a)(28) was included as part of the amendments to "ameliorate the harsh effect of the child support assignment and reimbursement provisions." 848 P.2d at 1345. The provision essentially returns "gap" child support funds to families in what is termed a "supplemental payment."

Thus, a family whose monthly standard of need was $500, but whose AFDC check was only $400, would receive up to $100 of the child support payments collected on its behalf by the state. Appellants want us to understand that "if Wyoming applies a current SON for benefit entitlement limitation there is no basis for application of the § 602(a)(28) supplementary payments. Consequently this claim is in effect converse or alternative to the Standard of Need claim...." In other words, appellants argue that the child support may be withheld by the state, causing a reduction in income, only if payment would result in family income over and above a realistic, updated standard of need. But this battle they have already lost. Since, as we have just held, appellants

cannot challenge, under § 1983, the state's choice of an SON, they cannot prevent its use in determining what amounts of child support "would not have caused a reduction in the amount of aid paid to the family" in accordance with § 602(a)(28).

The district court, therefore, did not err in considering this child support claim as "simply one aspect of [plaintiffs'] challenge to ... the state's standard of need...."

### Incomplete Discovery

■ Although appellants list this as a last claim, we deal with it at this time since its resolution affects our responses to appellants' claims involving the management of child support payments and the prospective welfare "reforms."

We rehearse the procedural history. Both the complaint and the amended complaint were filed in May 1993. A pretrial order was issued on October 22, 1993, setting a cutoff date for discovery at February 11, 1994. Then followed interrogatories, and requests for production. A third request for production by plaintiffs was made on February 11, 1994, the cutoff date. A response was made on March 14. On March 22, at a final appearance before the court, the following exchange took place:

> THE COURT: [I]s there anything pending by way of compelling discovery or anything of that nature?
>
> MR. URBIGKIT: I will file that within the week since I only finished—there's nothing pending today.

The court issued its order on summary judgment three weeks later, on April 16, 1994. On May 16, fifty-five days after the hearing, counsel for appellants filed an affidavit with accompanying correspondence evidencing both confusion and some dissatisfaction about what was to have been produced in response to some fifteen requests. There was no motion for reconsideration filed after

---

4. 42 U.S.C. § 602(a)(28) requires a state plan to provide that,

in determining the amount of aid to which an eligible family is entitled, any portion of the amounts collected in any particular month as child support pursuant to a plan approved under [another part of the statute], and retained by the State under [42 U.S.C. § 657], which (under the State plan approved under

this part as in effect both during July 1975 and during that particular month) would not have caused a reduction in the amount of aid paid to the family if such amounts had been paid directly to the family, shall be added to the amount of aid otherwise payable to such family under the State plan approved under this part....

the court issued its judgment. There has never been any hint of what materials were not provided or why they were material.

Reviewing under an abuse of discretion standard, we simply cannot fault the district court for ruling at the time it did.

### Mismanagement of Child Support Funds

██ Appellants contend that "the record clearly demonstrates confusion in proper accounting and lax application of specific rules in the distribution process utilized in handling the trust funds." The district court summarily dismissed this and the last substantive claim as not raising any genuine issue of material fact. We think the court made no error, and we briefly indicate our reasoning.

Appellants seem to be under the impression that it was defendants-appellees' burden to request specific information about the nature of this claim. Defendants, in supporting their motion for summary judgment, specifically asked for "what actions or inactions of the Defendants the Plaintiffs allege are improper." The closest the appellants come to responding is to list some seven derelictions reported "in case law or text review." Such a response is a far cry from supplying specific facts in the case at hand. Appellants simply failed to make out their case, although given adequate opportunity.

### Welfare Reform

Appellants candidly concede that "If the record on the child support trust funds could appropriately be described as incomplete and segmented, the presented appeal record on the fourth category of claims included in Appellants' complaints is fragmentary, if not essentially nonexistent." Again, they seem to feel, and argue, that the burden was on appellees to move for a more definite statement. But Fed.R.Civ.P. 56(e) requires that a party opposing summary judgment advance sufficient specific facts to show that a genuine issue of material fact exists. Pleadings and conclusory allegations are not enough.

The most that the record reveals is averments from some six or seven plaintiffs that, because of the limitation on higher education pursuits by welfare recipients, they would be "devastated, destroyed and bothered" by be-ing forced into employment or reduction of benefits. We have no facts about the imminence of their devastation, and no law indicating in what way the statutes or Constitution are being violated.

The claim addressed to housing subsidies was not raised below, and we have been given no details concerning penalties, "workfare," or "learnfare."

We therefore see no error in the court's finding no genuine issue of material fact.

*Affirmed.*